561 So.2d 830 (1990)
Eugene A. HARPER & Edwina Harper, Third-Party Plaintiffs/Appellants,
v.
William Elton KENNEDY & Tomette Kennedy, Third-Party Defendants/Appellees.
No. 21415-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
*831 Kidd & Kidd by Paul Henry Kidd, Sr., Monroe, for third-party plaintiffs/appellants.
Rankin, Yeldell, Herring & Katz by Richard Bailly, Bastrop, for third-party defendants/appellees.
McGlinchey, Stafford, Mintz, Cellinin & Land by William V. Dalfere, Jr., New Orleans, for exceptor/appellee.
Before HALL, FRED W. JONES, Jr., and HIGHTOWER, JJ.
FRED W. JONES, Jr., Judge.
In this action for executory process, third-party plaintiffs, Eugene A. and Edwina Harper (hereinafter referred to as plaintiffs), appealed the judgment of the trial court in favor of third-party defendants, William Elton Kennedy and Tomette S. Kennedy (hereinafter referred to as defendants), dismissing their claim of unjust enrichment as the result of numerous real estate transactions. Finding that the trial court did not err in holding that the Harpers failed to meet their burden of proof, we affirm the judgment of the trial court.
Issue Presented
On appeal, the sole issue presented is whether the trial court erred in holding that plaintiffs did not prove by a preponderance of the evidence the defendants were unjustly enriched at the Harpers' expense.
Factual Context
This case and the companion case of Pioneer Enterprises, Inc. v. Goodnight, 561 So.2d 824 (La.App. 2d Cir.1990), arose from a series of complex real estate transactions and the poor farm economy in Northeast Louisiana in the early 1980s. During this period of time, the Harpers and the Kennedys entered into various complicated real estate dealings during the winter and spring of 1980. The Harpers and Kennedys became interested in purchasing a 503 acre tract in Morehouse Parish known as the Brodie tract. This tract of property was owned by Neil Mott and James Brown and there was a vendor's lien and mortgage on the property in favor of Kenneth Brodie with a balance due of $380,811.58. Kennedy was interested in obtaining the tract as it adjoined the bulk of property he already owned and it would provide him road access to his property. Harper wished to acquire the property for cotton and sweet potato farming. The Harpers and Kennedys agreed to divide the tract following their purchase as they were both interested in different portions. Harper was interested in a 214 acre portion of the property and Kennedy was interested in the remaining 289 acres.
The parties began negotiations for the purchase of this property which was acquired by them in a complicated series of real estate transactions. Harper agreed he would pay $2500 per acre for the 214 acre portion of the Brodie tract for a total of $535,000 and Kennedy would pay $1350 per acre for the remaining portion with a total *832 purchase price of $912,000. Harper and Kennedy entered into an agreement with Brown and Mott for a tax free exchange of property. In the agreement, Kennedy and Harper agreed to acquire property located in Arkansas from East Lynn Corporation in order to exchange this property for the Brodie tract. It appears that Brown and Mott intended to later exchange the Arkansas property for property in Morehouse Parish owned by another party, Jimmy Lynn Baugher. Harper, Kennedy, Brown and Mott acquired 1208 acres of property located in Arkansas from East Lynn Corporation and Harper and Kennedy later exchanged their interest in the Arkansas acreage to Mott and Brown for the Brodie property. This exchange occurred on February 28, 1980. In the exchange agreement between Brown, Mott, Kennedy and Harper, Kennedy and Harper assumed the vendor's privilege and mortgage retained by Brodie and agreed to hold Brown and Mott harmless from this indebtedness. In turn, Brown and Mott agreed to assume in entirety certain mortgages and encumbrances affecting the Arkansas property. The Brodie tract was specified as having a present fair market value of $921,625 with an indebtedness remaining of $380,811.58, leaving an equity position in favor of Brown and Mott of $540,813.42. That was exactly the same equity position Kennedy and Harper had in the Arkansas property which was acquired by them for the purposes of making the tax free exchange.
In order to finance these transactions, the Kennedys and Harpers executed a mortgage in the amount of $600,000 in favor of the Bank of Morehouse on February 28, 1980. The mortgage was secured by a 457 acre tract in Morehouse Parish owned by the Harpers. On March 3, 1980, the Harpers executed a second $600,000 mortgage in favor of the Bank of Morehouse which included only the Harpers 457 acres of property. On that same date, Kennedy and Harper, using the 457 acre mortgage as collateral, made a loan at the Bank of Morehouse and later deposited into the account of Brown and Mott loan proceeds in the amount of $521,650.32.
On May 13, 1980, the Harpers and the Kennedys entered into a partition deed whereby they partitioned the newly acquired property in Morehouse Parish. Pursuant to the agreement, the Harpers acquired 214 acres and the Kennedys retained 289 acres. In the partition deed, the Kennedys agreed to assume the Brodie mortgage remaining on the property and agreed to hold the Harpers harmless from the payment of that debt. On that same date, the Harpers borrowed $675,000 from Federal Land Bank of Jackson, Mississippi, using their 457 acres as collateral for that loan. It appears that the proceeds from this loan and a personal check from the Harpers in the amount of $30,742.86 were paid to the Bank of Morehouse to liquidate the total amount owed on Harpers' and Kennedys' loan from the Bank of Morehouse. The loan was also used to liquidate an existing mortgage by Brodie on the property to Federal Land Bank.
To further complicate matters, the Harpers apparently had mortgaged property located in West Carroll Parish to Melvin Ward which mortgage was secured by 18 sequential promissory notes. In turn, the notes had been pledged by Ward to Dixie Business Investment Company to secure a loan. Ward and Dixie Business Investment Company allowed the Harpers to substitute their 457 acre Morehouse Parish tract as security for the mortgage as the Harpers wished to sell the West Carroll Parish property.
Ward later needed funds to pay off his indebtedness to Dixie Business Investment Company. In order to accommodate the Harpers and as a benefit to all parties concerned, Kennedy loaned Ward the money to pay off the Dixie Business Investment Company indebtedness and in turn the Harper notes were pledged to the Kennedys by Ward on May 13, 1980 to secure the loan in the amount of $245,000. On that same date, the Harpers executed a $245,000 mortgage on the 457 acres which was given to the Kennedys. This mortgage was cancelled "paid in full" by Kennedy on February 9, 1982. It appears that the Harpers also executed an Act of Mortgage and/or Pledge on their 214 acre tract *833 in order to secure the notes. Thus the Kennedys had a second mortgage on the 457 acre tract behind Federal Land Bank and on the 214 acre tract behind Brodie.
It appears Ward could not make the payments owed to the Kennedys and Kennedy sold the Harper notes to Sterlington Bank on February 10, 1982. Shortly after the notes were conveyed to Sterlington Bank, they were called for payment. The Harpers tried to get the 214 acres refinanced but were unable to do so because of the Brodie first mortgage. Due to the fact the Harpers were unable to refinance the 214 acres, they were unable to prevent Federal Land Bank from foreclosing on the 457 acre tract. The Harpers eventually lost the 214 acres to Sterlington Bank. The Kennedys retained the 289 acres of the Brodie tract acquired in the exchange and later acquired the 457 acre tract formerly owned by the Harpers from Federal Land Bank.
On February 15, 1985 this action was commenced by the filing of a petition for executory process by Sterlington Bank. In its petition, Sterlington Bank alleged it was the holder and owner of thirteen negotiable promissory notes secured by Act of Mortgage and Pledge granted by the Harpers on the 214 acres of property. Sterlington alleged the Harpers had made no payments on the notes and it thereby exercised its option under the terms of the notes to accelerate the remaining installments due. Sterlington Bank requested that a Writ of Seizure and Sale be issued directing the seizure and sale of the 214 acre tract of property. In response to the petition filed by Sterlington Bank, the Harpers filed an answer and reconventional demand, motion for injunction to enjoin the sale, motion for damages for wrongful issuance of seizure and a third-party demand. Pertinent to this appeal, in their third-party demand the Harpers named as third-party defendants William and Tomette Kennedy, primarily alleging the Kennedys had refused to honor their agreement to pay the mortgage indebtedness to Brodie and had prevented the Harpers from peaceful enjoyment and profits from the property.
On August 20, 1986, Sterlington Bank filed a motion to dismiss its petition for executory process. On September 3, 1986 a joint motion rescinding the order dismissing the petition for executory process was filed returning the matter to active status. On that same date, Sterlington Bank filed an amending and supplemental petition to convert the executory proceeding into an ordinary proceeding. On October 1, 1986 the Harpers filed an amended answer and third-party demand reiterating their claims that the Kennedys had refused to honor the agreement to pay the Brodie mortgage indebtedness and had prevented them from the peaceful enjoyment and profits of the subject property.
On December 16, 1986 the Harpers filed a second amending and supplemental third-party demand alleging that in acquiring the Brodie tract the Harpers and Kennedys had agreed to pay $540,813.42 of the $921,625 purchase price in cash and to assume the remaining $380,811.58 by agreeing to assume the indebtedness of Brown and Mott to Brodie which was secured by a first mortgage on the property. The Kennedys then arranged a loan at the Bank of Morehouse to finance the transaction. The Harpers alleged they paid the loan owed by them and the Kennedys to the Bank of Morehouse out of proceeds of a loan they had made from Federal Land Bank on a second tract of land they owned in Morehouse Parish. Therefore the Kennedys paid no money toward the liquidation of the loan at the Bank of Morehouse. The Harpers alleged that the act of partition whereby the Brodie tract was divided did not reflect the parties' intent. In fact, what the Kennedys did was to have the Harpers pay the entire cash purchase price for the Brodie tract, partition the property into two separate tracts leaving the 214 tract acquired by the Harpers burdened with the Brodie first mortgage and a second mortgage of approximately $240,000 represented by the Ward notes. The Harpers alleged that the total effect of the transactions was that they paid $540,813.42 in cash and assumed $620,811.58 in mortgage obligations for the 214 acre tract. This represented a total purchase price of $1,161,625 *834 for the 214 acre tract for a per acre price of $5428.15. The Harpers further alleged the Kennedys had agreed to hold them harmless from the Brodie mortgage indebtedness but the Kennedys had failed to honor this agreement. Further, the Kennedys had been able to maintain complete control of the entire 503 acre Brodie tract without having put up a single penny of the purchase price. The Harpers alleged that as a proximate and direct result of the Kennedys' financial and real estate manipulations they had lost their acreage in Morehouse Parish on which they borrowed funds from Federal Land Bank to liquidate the indebtedness to the Bank of Morehouse, they had been forced into personal bankruptcy and they had lost an equity ownership interest in the 214 acres.
Trial on this matter commenced on October 29, 1987. On that date, the Harpers and Sterlington Bank entered into a stipulated judgment whereby the Harpers conveyed the 214 acre tract to Sterlington Bank. Sterlington Bank later assigned the promissory notes to Pioneer Enterprises, Inc., which assignment formed the basis for the litigation in the companion case of Pioneer Enterprises, Inc. v. Goodnight, 561 So.2d 824 (La.App. 2d Cir.1990). The trial in this matter was continued to a later date.
On January 19, 1988 the Harpers filed a motion to amend and supplement the third-party demand against the Kennedys alleging they had obtained new information as to their pending cause of action against the Kennedys during discovery proceedings. In their third amending and supplemental third-party demand the Harpers essentially alleged that during these complex real estate transactions there was no legal representative for the parties and Kennedy had represented the Harpers. The Harpers, without reading any of the documents, signed them relying solely on the advice of Kennedy. The Harpers alleged they were unaware what money, if any, changed hands, etc. Rather, their sole understanding at the time the documents were signed was that they were paying $2500 for approximately 214 acres of the Brodie tract. After setting forth the various dealings between the parties, the Harpers alleged they had repeatedly tried to free their 214 acres from the Brodie mortgage but Kennedy had refused to hold them harmless. Thus, having fully mortgaged their 457 acre tract to obtain money to purchase the 214 acre tract, the Harpers were helpless to use the Brodie tract in which they invested approximately $540,000 and owed less than $200,000 in any manner to obtain capital to continue their farming operation.
Trial Court Action
Following the conclusion of the trial on the merits, which focused on the Harpers' third-party demand as the result of the judgment between Sterlington Bank and the Harpers, the trial court found in favor of the defendants. In its written reasons for judgment, the trial court noted the very complex nature of the real estate transactions whereby the Harpers and Kennedys acquired ownership of the Brodie tract. The trial court observed that the purchase price for the entire tract was $912,000 or $1825 per acre. The Harpers' portion for the 214 acres came to $535,000 or $2500 per acre whereas the Kennedys' portion for the remaining acreage came to $377,000 or $974.16 per acre. The court found that the allocations were arrived at by agreement between Harper and Kennedy on the basis that the acreage acquired by the Harpers was worth more than that acquired by the Kennedys. Accordingly, the Harpers paid for their tract by paying off the note to the Bank of Morehouse and the Kennedys paid for their tract by assuming the entire balance of the Brodie mortgage. The court found the terms of the partition deed were clear and precise and the deed was an arm's length transaction between knowledgeable parties. The court noted it was very clear that the term "hold harmless" used in the partition deed right after a description of the Brodie mortgage referred to the payments yet remaining on the mortgage and the Harpers would be held harmless or indemnified by the Kennedys if payment was ever demanded of them. The court stated that the Kennedys had timely made all mortgage payments.
*835 The court further noted that at the Harpers' request Kennedy loaned Ward $245,000 to pay off his indebtedness. As security for this loan, the Kennedys received from Ward a first mortgage on property in Ouachita Parish, a number of promissory notes executed by the Harpers and pledged to Ward, a second or third mortgage on the Harpers' 457 acre tract of property and a second mortgage on the Harpers' 214 acre tract of property. The court noted, that whether admitted or not, clearly the loan by the Kennedys to Ward was done as an accommodation by the Kennedys to the Harpers. Considering all of the transactions which took place during this period of time, the court found that the Harpers were fully and completely aware of what was going on and knew exactly what they were doing. The court found that what caused the downfall of the Harpers was not anything done by the Kennedys but rather could be attributed to the failing farm economy in the mid-1980s when land values were sent to all time lows, placing farmers in the position of having their debts exceed the value of their landmaking it impossible to borrow money. The Harpers had the burden of proving their allegations of unjust enrichment by a preponderance of the evidence and after reviewing all of the evidence in this case, the court found the Harpers had failed to meet this burden.
Legal Principles
An action for unjust enrichment or actio de in rem verso is founded upon the equitable principle that no one should be enriched at the expense of another. The basic principle of an unjustified enrichment is that plaintiff has suffered an economic detriment for which he should not be responsible while defendant has received an economic benefit for which he has not paid. The action is used to fill a gap in the law where no express remedy is provided. To deter courts from turning to equity to remedy every unjust displacement of wealth with unregulated discretion, certain limitations have been imposed which are applicable to the action for unjust enrichment. To successfully invoke the action there must be:
1) an enrichment;
2) an impoverishment;
3) a connection between the enrichment and the impoverishment;
4) an absence of justification or cause for the enrichment and impoverishment; and,
5) no other remedy at law.
The enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee and the enrichee or between a third-party and the enrichee. Legal cause or justification exists where there is a lawful contract or provision of law intended to permit the enrichment or to prevent the impoverishment or to bar attack on the enrichment or the impoverishment. Enrichment has legal justification when it flows from the proper application of a rule of law or contractual provision. The action must not be allowed to defeat the purpose of a rule of law directed to the matter at issue. In other words, it must not "perpetrate a fraud on the law".
See Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983); Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116 (La.1974); Mouton v. State, 525 So.2d 1136 (La.App. 1st Cir.1988), writ denied, 526 So.2d 1112 (La.1988); First National Bank of Shreveport v. Crawford, 455 So.2d 1209 (La.App. 2d Cir.1984); Carter v. Flanagan, 455 So.2d 689 (La.App. 2d Cir.1984), and Roberson Advertising Service v. Winnfield Life Insurance, 453 So.2d 662 (La.App. 5th Cir.1984).
Unjust Enrichment
On appeal, plaintiffs argue the trial court erred in finding they had failed to prove the unjust enrichment of the Kennedys by a preponderance of the evidence. We disagree.
Having reviewed the evidence relative to the complicated transactions between these parties, we find the trial court did not err in holding that plaintiffs failed to prove all the necessary elements to establish a claim of unjust enrichment.
*836 As noted above, the first requirement is proof that the defendants were enriched. The record does not demonstrate that the Kennedys were in any way enriched by these transactions. In fact, it appears the Kennedys paid or are obligated to pay for any benefits they have received from these transactions. The Kennedys ultimately acquired ownership of a 289 acre portion of the 503 acre Brodie tract but to acquire that property the Kennedys assumed full responsibility for the Brodie first mortgage with an outstanding balance in excess of $380,000. They have made payments on that mortgage and will continue to make these payments until such time the Brodie debt is extinguished. The payoff balance of that loan was essentially equal to the price the Kennedys agreed to pay for their share of the Brodie tract when the Kennedys and Harpers initially decided to acquire that property. Thus, it cannot be said the Kennedys were enriched in any fashion in acquiring the 289 acre tract. The only other asset the Kennedys ultimately acquired as the result of this sequence of events was the 457 acre tract in Morehouse Parish previously owned by the Harpers. However, the Kennedys acquired that property from Federal Land Bank after Federal Land Bank had foreclosed on the property. There is nothing in the record to indicate the Kennedys paid less than fair value for this tract of property so that transaction will not support the claim of enrichment asserted by the Harpers.
The second prerequisite for a finding of unjust enrichment is that plaintiffs must have been impoverished. The Harpers did lose their 214 acre portion of the Brodie tract as well as the 457 acre tract. Although there may be some dispute as to whether this was an impoverishment because the loss of the land resulted from the Harpers repeatedly shifting debt from one tract to another in order to finance real estate transactions from which they clearly benefited by acquiring additional farm land, there is no need to address the impoverishment issue in detail because we find no causal connection between the alleged impoverishment and the conduct of the Kennedys.
The third requirement is a causal connection or relationship between the enrichment and the impoverishment. We find no such connection in this case. We find that the cause of the Harpers' alleged impoverishment was the failing farm economy in Louisiana in the 1980s accompanied by declining land values and the Harpers' lack of capital rather than any course of conduct undertaken by the Kennedys. It appears that during all of these complex transactions the Harpers were relying on borrowed capital for financing and when the economy was such that they could no longer borrow the necessary funds to meet their obligations they lost their land to foreclosure. The fact that the Kennedys participated in the transaction whereby the Harpers undertook debt in excess of $500,000 in order to obtain their portion of the Brodie tract does not render the Kennedys legally responsible for the losses suffered by the Harpers when they were no longer able to pay that debt or other debts related to that transaction.
As we have found no enrichment of the defendants and thus no causal relationship between the conduct of the Kennedys and the alleged impoverishment of the Harpers, we need not address in detail the fourth element which is the absence of justification or cause for the alleged enrichment and alleged impoverishment. We note, however, that the positions of each of these parties resulted from valid juridical acts and lawful contracts executed between these two knowledgeable businessmen dealing at arms length and in full awareness of the consequences of their actions and the obligations they were undertaking. We find no evidence of overreaching by the Kennedys and no lack of understanding by the Harpers. Each party must live with the consequences of their contracts and the fact the Kennedys were able to withstand and weather a general downturn in the farm economy does not make them liable for the Harpers' misfortune.
As plaintiffs have clearly failed to meet their burden of proof on the first four elements of unjust enrichment, it is unnecessary to consider the fifth element of lack *837 of any other legal remedy available to plaintiffs.
Decree
For the reasons stated herein, the judgment of the trial court in favor of defendants is hereby AFFIRMED at the costs of plaintiffs.