561 So.2d 824 (1990)
PIONEER ENTERPRISES, INC. Intervenor, Plaintiff/Appellant,
v.
Austin T. GOODNIGHT, et al., Defendants/Appellees.
No. 21414-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
*825 Kidd & Kidd, Monroe by Paul H. Kidd, Sr., for plaintiff/intervenor.
Rankin, Yeldell, Herring & Katz, Bastrop by Richard Bailey, for defendants/appellees Austin T. Goodnight, William Elton Kennedy.
McGlinchey, Stafford, Mintz, Cellinin & Land, New Orleans by William V. Dalferes, Jr., for Federal Land Bank of Jackson, Miss., exceptor/appellee.
Before HALL, C.J., and FRED W. JONES, Jr. and HIGHTOWER, J J.
FRED W. JONES, Jr., Judge.
In this action to reinstate a mortgage after its cancellation, substituted plaintiff, Pioneer Enterprises, Inc., appealed the judgment of the trial court in favor of defendants, Austin T. Goodnight, Clerk of Court, and William Elton Kennedy finding that the mortgage was properly and legally cancelled. For the reasons stated herein, we affirm the judgment of the trial court.
Issue Presented
The narrow issue presented on appeal is whether the trial court erred in holding that the mortgage was properly and legally cancelled pursuant to La.C.C. Art. 3371.
Factual Context
Eugene and Joyce Harper, mortgagors, acquired land from Elva S. Ward in West Carroll Parish by an Act of Conveyance with Assumption of Existing Mortgage and Vendor's Privilege Retained dated December 20, 1977. The mortgagors gave 18 negotiable promissory notes, each dated December 20, 1977, to Elva Ward for the purchase price. The notes were serially numbered from 3-20, the first seventeen were in the sum of $29,172 and the last note was for $27,237.61. The notes were each made payable to the "Order of Bearer" and were paraphed "Ne Varietur" by a notary for identification with the Act of Conveyance with Assumption of Existing Mortgage and Vendor's Privilege Retained.
*826 The notes were later pledged to Dixie Business Investment Company by Elva Ward as security for a loan which Critters Creek, Inc. and/or Melvin E. Ward and Marilyn B. Ward had secured from Dixie Business Investment Company. It appears the Harpers wished to sell the property on which the mortgage and vendor's privilege were retained to secure the notes and Elva Ward and Dixie Business Investment Company agreed to release the land that was to be sold from the mortgage and vendor's privilege provided that the Harpers would give them a mortgage on 456 acres of property that they were acquiring in Morehouse Parish to secure the notes. The eighteen notes were then paraphed to the Morehouse mortgage and the Harpers agreed to make the payments to Dixie Business Investment Company on the eighteen notes as long as they were pledged to secure the Wards' debts. The notes were then paraphed to the Morehouse mortgage which was executed on October 16, 1979.
On May 13, 1980 Dixie Business Investment Company, Elva Ward, Melvin Ward and Marilyn Ward appeared before a notary and executed an affidavit wherein they stated they were recipients of an Act of Mortgage and Pledge executed by the Harpers, which document was filed October 16, 1979 in the mortgage records of Morehouse Parish. The appearers stated the document was labeled an Act of Mortgage though in fact it was an Act of Pledge whereby the Wards pledged certain promissory notes of the Harpers to Dixie Business Investment Company as security for a loan from Dixie Business Investment Company to Melvin and Marilyn Ward and/or Critters Creek, Inc. The security for the pledge was a pledge of land owned by the Harpers located in Morehouse Parish and for that reason the document was recorded in the mortgage records of Morehouse Parish. The appearers stated as the document was not a mortgage but a pledge, there was no mortgage note as such and for this reason the notarial act executed by the parties was entered into authorizing, directing and requesting that Austin T. Goodnight, Clerk of Court of Morehouse Parish, cancel from the mortgage records the inscription of said document. The appearers further stated that the loan made by Dixie Business Investment Company had been fully paid with no sums further owing and the act of pledge should therefore be cancelled so it would not act as a lien against the Harpers' property. The parties agreed and stipulated they would hold the Office of Clerk of Court harmless in all respects for any and all liability in connection with this matter. On the basis of this affidavit, the Clerk of Court cancelled the mortgage on that same date.
On October 27, 1987, Sterlington Bank filed a petition for a writ of mandamus alleging it was the holder and owner of 13 negotiable promissory notes in the full sum of $29,172. Each promissory note was payable to the "Order of Bearer" and had been paraphed "Ne Varietur" by a notary public for identification with a Vendor's Lien and Privilege filed in the West Carroll Parish mortgage records on December 21, 1977, an Act of Mortgage filed in the Morehouse Parish mortgage records on October 16, 1979 and an Act of Pledge filed in the Morehouse Parish mortgage records on May 14, 1980. Plaintiff contended the notes had never been paid and notwithstanding this fact, on May 13, 1980 Austin T. Goodnight, Clerk of Court, cancelled the mortgage inscription. Plaintiff asserted the authority used by the Clerk to cancel the mortgage inscription was the affidavit executed by Dixie Business Investment Company, Elva Ward, Melvin Ward and Marilyn Ward, notarized by James E. Yeldell and recorded in the mortgage records of Morehouse Parish. Plaintiff asserted that contrary to the allegations of the affidavit, the document recorded in the mortgage records was in fact a mortgage and was erroneously cancelled absent a presentment of the mortgage notes marked "Paid". Plaintiff contended it was entitled to have the cancellation of the mortgage inscription erased and the mortgage reinstated effective from the date of its first recordation, October 16, 1979.
It appears that the Clerk of Court simultaneously filed an answer wherein he admitted the mortgage was cancelled upon *827 the presentment of the affidavit of Dixie Business Investment Company, Melvin Ward, Marilyn Ward and Elva Ward as alleged. The Clerk waived all legal delays, admitted no knowledge of any facts to dispute the allegations made in plaintiff's petition and submitted the matter to the trial court for an immediate decision either in open court or in chambers. On that same date, the trial court took the matter up in chambers and without a hearing in open court rendered a judgment in favor of plaintiff, Sterlington Bank, ordering the Clerk of Court to cancel and erase the previous cancellation of the Act of Mortgage.
On October 28, 1987, Federal Land Bank of Jackson, Mississippi filed a motion to set aside an ex parte judgment wherein it sought to obtain a judgment from the trial court setting aside the previous judgment signed on October 27, 1987. In its motion, Federal Land Bank asserted that it was the owner of the previously mortgaged real estate and contended the judgment should be set aside because of the improper use of the mandamus procedure and the failure of Federal Land Bank to be allowed an opportunity to be heard. Federal Land Bank contended that the erasure of the cancellation of the mortgage had the effect of encumbering its property and the mandamus procedure used to encumber its property was wrongful in that erasure of the cancellation was not an ministerial act. Further, Federal Land Bank asserted the judgment was improper because of the failure of plaintiff to join it as in indispensable party to the litigation. On that same date, the trial court ordered the previous judgment reinstating the mortgage be rescinded and set aside and that Sterlington Bank and Austin T. Goodnight show cause why the original cancellation of the mortgage should not be reinstated.
During the pendency of the proceedings, Sterlington Bank assigned the mortgage notes sued upon to Pioneer Enterprises, Inc. and it was substituted as plaintiff on October 29, 1987.
After a hearing on the order to show cause, the trial court issued a written opinion on January 26, 1988 stating that after reviewing the jurisprudence it concluded that a mandamus action was not the proper remedy to compel the erasure of the cancellation of the mortgage. The court found it should not have issued the writ of mandamus or signed the judgment. On its own motion, the court declared its judgment dated and signed October 27, 1987 ordering the defendant, Austin T. Goodnight, Clerk of Court, to cancel and erase the cancellation of the mortgage inscription made pursuant to the affidavit to be absolutely null and void and the judgment was vacated.
Upon application for supervisory writs by plaintiff, this court found on its own motion the failure to make Federal Land Bank a party resulted in an invalid judgment dated October 27, 1987 voiding the cancellation. For that reason, the action of the trial court setting the judgment aside by order dated October 28, 1987 and ordering a show cause hearing was correct and in effect amounted to the granting of a new trial. The matter was remanded to the trial court directing the joinder of Federal Land Bank as a defendant and the holding of a new trial on all the issues presented. See Sterlington Bank (Pioneer Enterprises, Inc., Assignee and Substituted Plaintiff) v. Goodnight, Austin T., No. 19,858-CW.
By supplemental and amending petition, plaintiff named Federal Land Bank and William Elton Kennedy defendants to the action. Plaintiff alleged Kennedy was now record owner of the property subject to the mortgage sought to be reinstated by virtue of a deed from Federal Land Bank to him dated February 10, 1988. Federal Land Bank then filed an exception of no right of action alleging that it no longer had any ownership interest in the property encumbered by the mortgage and plaintiff had no right of action against it.
After a trial on the merits, the trial court sustained the exception of no right of action filed by Federal Land Bank and plaintiff's claims as to this party were dismissed. With regard to the mortgage, the court found after a review of all the evidence presented that the "Act of Mortgage" *828 was properly and legally cancelled pursuant to La.C.C. Art. 3371 and dismissed plaintiff's action as to the remaining defendants.
Legal Principles
La.C.C. Art. 3371 provides:
Inscriptions of mortgages and privileges are erased by the consent of the parties interested and having capacity for that purpose; this consent to be evidenced by a release, or by a receipt given on the records of the court rendering the judgment on which the mortgage is founded.
The full and complete cancellation of a mortgage can only be obtained by bringing the original notes to the clerk and ex-officio recorder of mortgages, or if the notes are lost such proof must be furnished. One of the parties vitally interested and having capacity to consent to release of the mortgage is the holder of the note. La.C.C. Art. 3371 means that the holder of the note is one of the parties vitally necessary and interested and with the capacity to authorize the erasure or partial erasure of a mortgage. The articles dealing with the erasure of mortgages, partial or in full, intend that the release which is evidence of the consent of the parties interested and capable of authorizing the cancellation of the mortgage should be effective against the interested parties, that is, the holder of the note at the time of the execution of the release or any future holder of the note. The only way in which this may be accomplished is by having the holder produce the note and having the notary public paraph the note for identification with the act of release and for the act of release to state the holder of the note had produced the same and it had been paraphed and identified with the release. The jurisprudence provides mortgages may be reinstated when they have been cancelled due to fraud or error.
It is well-settled that the cancellation of the mortgage by the recorder without the knowledge or consent of the holder of the negotiable mortgage note does not deprive him of his security even with regard to a third-party dealing with the property on his faith in the public record. When there has been a erroneous cancellation of a mortgage from the mortgage records by the Clerk of Court and the purchase of the property by a third-party relying on the public records which show the mortgage to be cancelled, the mortgagee is entitled to enforce the mortgage against the mortgaged property.
See Central Bank v. Frost, 552 So.2d 508 (La.App. 2d Cir.1989); Cheleno v. Selby, 538 So.2d 706 (La.App. 4th Cir.1989), writ denied, 542 So.2d 1384 (La.1989); Gulf South Bank & Trust v. Demurest, 354 So.2d 695 (La.App. 4th Cir.1978); Davis-Wood Lumber Company v. DeBrueys, 200 So.2d 916 (La.App. 1st Cir.1967), and Bornes v. Vernon, 64 So.2d 18 (La.App. 1st Cir.1953).
Cancellation of the Mortgage
On appeal, plaintiff argues the trial court erred in holding that the mortgage on the 456 acres was properly and legally cancelled pursuant to La.C.C. Art. 3371. Plaintiff argues that the act that was cancelled was not a pledge but an act of mortgage and the cancellation of the pledge of the notes to Dixie Business Investment Company by the Wards could not be used to cancel the mortgage. Plaintiff contends the mortgage was misrepresented as an act of pledge in the affidavit and that all interested parties did not sign the affidavit authorizing the cancellation of the mortgage.
As noted above, La.C.C. Art. 3371 requires that the mortgage may only be cancelled by "the parties interested and having capacity for that purpose." Implicit in this article is the requirement that all interested parties consent to the cancellation. To hold otherwise would jeopardize the security of all mortgages. Therefore, the first step in analyzing the sufficiency of the act of cancellation is to identify the parties interested in the mortgage at the time the act of cancellation was executed and recorded.
Under its express terms, the mortgage was intended to provide security for the payment of eighteen sequential promissory notes signed by the Harpers and pledged to *829 Dixie Business Investment Company by the Wards, which notes were paraphed with the mortgage for identification. Clearly as long as Dixie Business Investment Company was the holder of the notes as pledgee under the pledge agreement it would be an interested party. By the same token, as long as the Wards were the owners of the notes subject to the pledge agreement they were likewise interested parties. It should be noted, however, that the status of Dixie Business Investment Company and the Wards as "interested parties" is wholly dependent upon their continued status as holder and/or owner of the eighteen notes. Once they lose ownership and/or a security interest in the notes then they also lose their "interested party" status and the new holder, owner or secured party would then become a "interested party." Thus a proper definition of interested party must necessarily include any holder, owner or person with a security interest in the notes.
In order to determine the sufficiency of the act of cancellation executed by the Wards and Dixie Business Investment Company, we must look within the four corners of that document to ascertain that it has been signed by all interested parties in the mortgage.
At the trial on the merits, the parties stipulated that the promissory notes paraphed with the mortgage would not be introduced into evidence in this case and that these notes had not been paid as of May 13, 1980, the date that the affidavit of cancellation was executed. The parties further stipulated as to the testimony of James Yeldell, the notary public before whom the affidavit was executed by the Wards and Dixie Business Investment Company, in the companion case of Harper v. Kennedy, 561 So.2d 830.
In the stipulated testimony, Yeldell testified he had notarized the affidavit of cancellation executed by the Wards and Dixie Business Investment Company. Yeldell stated that when the act of cancellation was executed he saw the notes which were paraphed with the mortgage and that Harper needed this mortgage cancelled so that he could give a first mortgage to Federal Land Bank on the property in order to obtain a loan. The document was executed simply to accommodate the Harpers so the loan from Federal Land Bank could be finalized. Yeldell stated there was no independent note which they could take to the Clerk of Court to cancel the mortgage and in order to effect cancellation they had to prepare a document the Clerk would accept. Yeldell stated the notes were not paid as they were an obligation owed by the Harpers to the Ward family and had been used as security to Dixie Business Investment Company. Had the notes been paid, Yeldell testified he would have stamped them "Paid" and used them to cancel the mortgage.
Yeldell stated Kennedy had made a new loan to Melvin Ward, in effect taking the position of Dixie Business Investment Company and requiring security. Thus, the Wards and Critters Creek, Inc. executed an act of pledge pledging the negotiable promissory notes as security for and in consideration of the loan from Kennedy to the Wards. This act of pledge was executed on the same date as the act of cancellation, May 13, 1980 and clearly stated that Elva Ward was the original owner and holder of the promissory notes. The act of pledge was executed before Yeldell and the promissory notes were paraphed "Ne Varietur" for identification with this act of pledge. The testimony of Yeldell indicates that the notes were in fact presented to him and they were paraphed for identification with that document on the same date the act of cancellation was executed. It appears from Yeldell's testimony that the Harpers also executed an Act of Mortgage and/or Pledge on 214 acres of other property in order to secure the notes on that same date.
This evidence, presented without objection, clearly establishes that on the date the act of cancellation was executed, the Wards were the holders and owners of the promissory notes. Accordingly, the Wards were the primary "interested parties" to the mortgage as owners and holders of the *830 notes and their consent to the cancellation of the mortgage was sufficient to justify that cancellation. Although the document is deficient on its face as it does not identify any of these parties as having the current ownership, possession, or security interest in the notes, the parole evidence stipulated to by the parties without any objection as to its admissibility establishes the identity of the holders of the notes, thereby correcting any deficiency which may have appeared within the four corners of the document.
As the affidavit was sufficient to support the cancellation of the mortgage, the trial court did not err in finding that the mortgage had been properly and legally cancelled.
Decree
For these reasons, the judgment of the trial court in favor of defendants finding that the mortgage had been properly and legally cancelled is hereby AFFIRMED. Costs of this appeal are assessed to plaintiff.
HALL, C.J., concurs with written reasons.
HALL, Chief Judge, concurring.
Plaintiff, who subsequently became the holder of mortgage notes, has no legal basis for nullifying the prior cancellation or release of the mortgage securing the notes where the cancellation was authorized by the then holders and owners of the mortgage notes, and the instrument authorizing the cancellation was recorded in the mortgage records, even though the mortgage notes were not paraphed with the act authorizing cancellation. Recordation of the act authorizing cancellation and cancellation of the inscription by the Clerk served as adequate notice of the cancellation. Cancellation was authorized by the consent of the parties interested as required by LSA-C.C. Art. 3371.