433 So.2d 792 (1983)
Karen Deroche, Wife of/and Paul REMONDET
v.
RESERVE NATIONAL INSURANCE COMPANY.
No. 82-CA-231.
Court of Appeal of Louisiana, Fifth Circuit.
May 17, 1983.
Rehearing Denied July 15, 1983.
Robert R. Faucheux, Jr., Reserve, for plaintiffs-appellants.
*793 Kliebert & Heltz, Michael K. Heltz, Gramercy, for defendant-appellee.
Before CHEHARDY, BOWES and GAUDIN, JJ.
CHEHARDY, Judge.
The plaintiffs, Karen Deroche, wife of/and Paul Remondet, appeal from a summary judgment in favor of defendant, Reserve National Insurance Company. We affirm, for the following reasons.
Plaintiffs sued defendant under a hospitalization insurance policy that became effective April 6, 1978 and in which Karen D. Remondet and Chad P. Remondet were named insureds. Plaintiffs' petition and supplemental and amending petition alleged defendant had refused to pay benefits due under the policy for hospital and medical expenses plaintiffs incurred when Chad, plaintiffs' child, was hospitalized on September 21 to 24, 1978, October 25 to 27, 1979, and May 18 to 23, 1980. Plaintiffs further alleged the September 1978 hospitalization was for removal of the left testicle; the one in October 1979 was for recurring tonsillitis and tonsillectomy; and the one in May 1980 was for severe tibial torsion of the left leg and a rotational osteotomy.
The defendant filed a general denial together with a request for admission of the following alleged facts:
"(1) On July 25, 1977, Chad Remondet was diagnosed by Dr. Ward Turner as having a left undescended testicle.
"(2) On June 18, 1976 and again on July 12, 1976, Chad Remondet was treated for tonsillitis by Dr. Ward Turner.
"(3) The claims which were made, which form the basis of the above captioned suit all stem from congenital disorders and/or pre-existing conditions which Chad Remondet had prior to the issuance of the insurance policy in question."
As shown by the sheriff's return, this request for admissions was served on plaintiffs' attorney personally on January 18, 1982. No response to them was ever filed on behalf of plaintiffs.
On June 14, 1982, defendant filed a motion for summary judgment, attaching a copy of the insurance policy and an affidavit by defense counsel that this was a duplicate of the policy issued to plaintiff Karen D. Remondet. This motion in which a hearing date of October 6, 1982 was set, was served on plaintiffs' attorney on June 30, 1980.
On August 26, 1982 plaintiffs filed an opposition to the motion for summary judgment, contending there was a genuine issue of fact as to coverage, alleging plaintiffs were extended coverage for Chad Remondet's hospitalizations under a pre-existing benefit endorsement. Attached to the opposition was an affidavit by Karen Deroche Remondet, in which she stated:
"That on April 6, 1978, she did purchase an insurance policy (Form RH-73) from Reserve National Insurance Company;
"That pursuant to the purchase of such policy, her son, Chad, was covered per a pre-existing benefit endorsement;
"That Chad P. Remondet was hospitalized in September of 1978, October of 1979 and May of 1980;
"That she believes that all such hospitalizations are covered by the above-described policy purchased 4/6/78."
In their opposition memorandu, plaintiffs contend the pre-existing benefit endorsement on Chad Remondet provided coverage to encompass all "injuries" or "sicknesses" not sufficiently excluded in the policy attachments. They contended in this memorandum that coverage "as per the terms of the policy" was contested and therefore not appropriate for summary judgment.
According to the extracts from the minutes, the motion for summary judgment was heard on October 6, 1982. Only the attorney for the defendant was present, plaintiffs' attorney failing to appear despite having been served with a citation on the rule as mentioned above. The district court granted the motion for summary judgment.
The definitions section of the policy defines "injury" and "sickness" as follows:

*794 "INJURY: The word `injury' as used in this policy means accidental bodily injury resulting directly and independently of all other causes from an Accident, which occurs while the person whose injuries are the basis of a claim, is covered under this policy and which causes loss while this policy is in force. Any one `injury' shall be deemed to include all injuries resulting from any one accident. Payment may be made for either a `sickness' or an `injury' but not for both during the same period of hospital confinement.
"SICKNESS: The term `sickness' as used in this policy means sickness or disease, other than childbirth or complications of pregnancy (except as may be endorsed hereon) sustained by an Insured Person, which first manifests itself after the effective date of this policy, and which causes loss while this policy is in force. The term `sickness' shall also be deemed to include all sicknesses or diseases suffered concurrently (whether or not there is any relationship between the sicknesses or diseases) and any recurrence thereof and any subsequent sickness resulting from any of the same or related causes or conditions."
The benefits portion of the policy states:
"HOSPITAL BENEFITS. If any Insured while this policy is in force shall be confined within a recognized Hospital as hereinafter defined as a bed-confined inpatient on account of such `injury' or `sickness' at the direction and under the care of a licensed physician, the Company will pay the Insured Member (or the Hospital if authorized by the Insured to do so) for the following items of expense actually incurred as the result of any `injury' or `sickness,' but not to exceed an aggregate payment of Five Thousand Dollars ($5,000) for any one `injury' or `sickness' occurring while this policy is in force.
* * * * * *
"21. BENEFITS FOR PHYSICIAN'S CHARGES
A. Accidental Injuries
If any Insured shall sustain an accidental `injury' for which no hospital or other benefits are payable, and shall receive the first treatment by a `licensed physician,' within 48 hours after the occurrence of the accident causing injury, the Company will pay the expense actually incurred for such treatment, but not to exceed Ten Dollars ($10.00) for the first and Five Dollars ($5.00) for each call thereafter, not to exceed a total payment of Twenty-five Dollars ($25.00).
B. Sickness or Disease
If an insured is treated by a physician for `sickness' for which no hospitalization or other benefits are payable, the Company will pay to the Insured, or to the physician if authorized by the Insured, the expense actually incurred for such treatment, but not to exceed $3.00 for each treatment at a physician's office, or clinic, or Five Dollars ($5.00) for each treatment at the home of the Insured, and providing that payment shall not begin until after the second treatment for the same `sickness,' nor exceed in the aggregate the sum of Twenty-five Dollars ($25.00) during any policy year for any Insured."
The exclusions section provides:
"29. EXCLUSIONS
The insurance under this Policy shall not cover any loss caused or contributed to by suicide or attempt thereat while sane, war or any act of war (whether war is declared or not), venereal disease, rest cure, congenital conditions, mental or nervous disorders without demonstrable organic disease, loss sustained by the use of any intoxicant, pregnancy or complications therefrom, miscarriage or childbirth (except as may be specifically endorsed hereon. No benefit shall be payable for services: which an Insured is entitled to receive without cost of himself, except payments made under a Workmen's Compensation Law or for which a charge would not have been made if no insurance existed, or that the Insured is *795 not legally obligated to pay, or to the extent that charges for such services, which the Company would otherwise be obligated to pay, are paid by or through the Federal or a State government or any of their instrumentalities irrespective of whether the Insured has contributed to the procurement of such payments." (Emphasis added.)
Based on these provisions, together with the admissions made by plaintiffs as a result of their failure to respond to the request for admissions, defendant argues plaintiffs have admitted Chad's hospitalizations were all for pre-existing conditions or congenital disorders, which would be excluded under these portions of the policy.
Plaintiffs, on the other hand, contend the pre-existing benefit endorsement on Chad Remondet provided otherwise full benefits except for otitis media and/or any disease of the ear. Although not clearly stated, plaintiffs' position apparently is that the pre-existing benefit endorsement superseded the other provisions of the policy so that full coverage was provided for all pre-existing conditions except otitis media and other diseases of the ear.
The pre-existing benefit endorsement states:
"Reserve National Insurance Company in consideration of the payment of the additional premium, which has been included in the premium shown in the schedule of the policy to which this endorsement is attached, agrees to extend coverage under Policy No. 303149 to include Chad P. Remondet Applicant No. 2 who has the following condition(s) otitis media * * *.
"However, it is agreed that if loss is caused or contributed to by otitis media and/or any disease of the ears * * * then benefits are payable only in the amounts and upon the following terms and conditions:
1. WAITING PERIODS: No benefit shall be paid for any loss or expense incurred, as a result of such condition(s), prior to the expiration of 180 days from the effective date of the policy to which this endorsement is attached.
2. REDUCED BENEFITS: Benefits in the amount of 75% of those otherwise payable under the policy shall be paid for loss incurred as a result of such condition(s).
"This endorsement is subject to all of the provisions, conditions and limitations of the policy to which it is attached and which are not in conflict herewith. The policy and this endorsement are not severable and this endorsement shall expire concurrently with the policy unless otherwise earlier terminated." (Emphasis added.)
We find it clear that the pre-existing benefit endorsement provided coverage for Chad subject to limitations of the policy, except that claims for otitis media and/or any disease of the ears are subject to a waiting period and reduced benefits. Since the policy otherwise clearly excludes pre-existing conditions, by its definitions section and exclusions section, the effect of this endorsement is to allow limited coverage for otitis media and/or any disease of the ears, despite these being a pre-existing condition. The endorsement does not, however, change the other provisions, conditions and limitations of the policy, so other pre-existing conditions continue to be excluded from coverage.
An insurance policy is a contract between the parties, and while all ambiguities must be construed in favor of the insured and against the insurer, courts have no authority to change or alter its terms under the guise of interpretation when such terms are couched in clear and unambiguous language. Graham v. Equity Nat. Life Ins. Co., 373 So.2d 988 (La.App. 3d Cir.1979), writs denied 376 So.2d 319 and 376 So.2d 320.
Thus, the only factual issue that would have been presented in the court below was whether the conditions or disorders for which Chad was hospitalized first manifested themselves after the effective date of the policy, or whether they were caused or *796 contributed to by congenital or pre-existing conditions.
Defendant's request for Admissions No. (3) stated that the plaintiffs' claims all stem from congenital disorders and/or pre-existing conditions which Chad Remondet had prior to the issuance of the insurance policy in question. As mentioned, plaintiffs' failure to respond makes this request deemed admitted.
In Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La.1976), our Supreme Court upheld the use of requests for admissions to establish a controversial issue which constituted the crux of the matter in litigation. In that case, as here, the party to whom the requests were directed failed to respond within the allotted time, so the requests were deemed admitted. See LSA-C.C.P. arts. 1466, 1467.
Accordingly, the only issue of material fact is settled. For purposes of this lawsuit, the record establishes that Chad Remondet's claims stem from congenital disorders and/or pre-existing conditions which Chad Remondet had prior to the issuance of the insurance policy in question. Under the language of the policy, then, these claims would be excluded.
As discussed, the only exceptions to the exclusion of pre-existing conditions are otitis media and diseases of the ear. Plaintiffs have not made any claim for otitis media or other diseases of the ear.
There being no questions of material fact, the defendant was entitled to judgment as a matter of law. LSA-C.C.P. art. 966. Accordingly, the judgment of the district court is affirmed. Appellants are to pay all costs of this appeal.
AFFIRMED.