785 So.2d 111 (2001)
Kerry TANDY, Plaintiff-Appellant,
v.
PECAN SHOPPE OF MINDEN, INC., Defendant-Appellee.
No. 34,578-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
*113 Kitchens, Benton, Kitchens & Warren by Graydon K. Kitchens, Jr., Minden, Counsel for Appellant.
James M. Johnson, Minden, Counsel for Appellee.
Before BROWN, STEWART and KOSTELKA, JJ.
KOSTELKA, J.
Kerry Tandy ("Tandy") appeals the judgment of the Twenty Sixth Judicial District Court in favor of Pecan Shoppe of Minden, Inc. ("Pecan Shoppe") wherein his claim for unpaid wages, statutory penalties and attorneys' fees was denied.[1] Finding no error by the trial court, we affirm.

FACTS
Tandy was one of the original stockholders of Pecan Shoppe, along with Charles Eckels ("Eckels"), Jack Southerland ("Southerland") and Dale Denmark ("Denmark")each of whom owned a 25 percent interest in this Georgia corporation which was organized in 1964. Pecan Shoppe owned a Stuckey's store franchise in Minden, Louisiana. Originally, the franchiser corporation, Stuckey Corporation, managed the franchise, but at some point prior to 1994, the management was left to Pecan Shoppe. Tandy began acting as manager of the store in 1994 and continued to do so until October 1, 1998.
Tandy asserts that he is due wages from July, 1994 through August, 1996 and for the month of September, 1998 in the total amount of $50,000. Prior to filing suit against Pecan Shoppe, Tandy made demand for his alleged past due wages. In his Petition for Wages and Salary, he claims penalties and attorney fees pursuant to La. R.S. 23:631 and 632. After a trial of the matter, the trial court found that there was never an employment contract between Tandy and Pecan Shoppe authorizing payment to Tandy for managing the store. Additionally, the trial court determined that Tandy never received agreement or authorization from the shareholders of Pecan Shoppe for any *114 amount of compensation for his services as manager. This appeal ensued.

DISCUSSION

Failure to Answer Request for Admissions of Fact
A threshold issue to be addressed is Tandy's argument that pursuant to La. C.C.P. arts. 1467 and 1468, the failure by Pecan Shoppe to respond to his request for admission of facts results in those requests being deemed admitted. Of those various requests, Tandy points to the alleged admission by Pecan Shoppe that it was liable for Tandy's past unpaid salary, which Tandy argues is the crux of this litigation and should have resulted in judgment in his favor.
Admissions may be used to establish uncontradicted facts or controversial issues which constitute the crux of the matter in litigation. La. C.C.P. art. 1467; Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La.1976); Remondet v. Reserve Nat. Ins. Co., 433 So.2d 792 (La.App. 5th Cir.1983), writ denied, 441 So.2d 216 (La.1983). When the party receiving the request for admissions fails to respond to the request by any means, the fact is deemed admitted. Succession of Rock, supra; Jones v. Gillen, 504 So.2d 575 (La.App. 5th Cir.1987), writ denied, 508 So.2d 86 (La.1987); Remondet, supra. However, in Succession of Rock, the Louisiana Supreme Court pointed out that the codal articles do not require a party to utilize a particular form to respond to the request. The only formality dictated by La. C.C.P. art. 1467 is that "a written answer or objection addressed to the matter, signed by the party ...." be served upon the party which requested the admission. Article 1467 further states that "[a] denial shall fairly meet the substance of the requested admission...." (Emphasis added). In Voisin v. Luke, 249 La. 796, 191 So.2d 503 (1966), the Court considered verified exceptions as appropriate answers to a request for admissions.
In the case presently before us, the record clearly shows the issue of Tandy's alleged employment as manager of the Stuckey's store was in controversy before Tandy's request for admissions were served on Pecan Shoppe, as well as after their service. In its Answer, Pecan Shoppe denied unequivocally the pertinent allegations. Specifially, Pecan Shoppe denied that Tandy was "employed as manager" from July 1994 through August 1996 at a monthly salary of $2000, which is the issue in litigation. Additionally, after Tandy's request for admissions had been served on Pecan Shoppe's attorney,[2] Pecan Shoppe filed the counter affidavit of Jan Maxwell ("Maxwell"), Eckels' daughter who inherited his shares in Pecan Shoppe upon his death, wherein she stated twice that Pecan Shoppe had never approved a salary for Tandy. Moreover, and perhaps most importantly, we note that Tandy's very pointed requests for admissions do not address the issue of whether Tandy was employed by Pecan Shoppe, which is the determination made by the trial court. Pecan Shoppe's other responsive pleadings filed during the course of the proceedings clearly indicate that the issue of whether Pecan Shoppe owed Tandy any salary for his alleged services to the corporation was disputed, regardless of the fact that Pecan Shoppe failed to file a formal response to Tandy's request for admissions.

Employment of Tandy
As his first assignment of error, Tandy argues that the trial court erred in its factual determination that Pecan Shoppe had not employed him to be manager of the Stuckey's store.
*115 A district court's findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Under the manifest error standard, the linchpin is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are in fact reasonable. Lewis v. State Through Dept. of Transp. and Development, 94-2370 (La.04/21/95), 654 So.2d 311. In other words, the appellate court may not reverse simply because it is convinced that had it been sitting as the trier of fact, it would have ruled differently. Lewis, supra. A finding of fact by a trial court should be upheld unless it is clearly wrong. Madison v. Thurman, 32,401 (La.App.2d Cir.10/27/99), 743 So.2d 857.
When findings of fact are based upon evaluations of witness credibility, the manifest error/clearly wrong standard demands great deference to the trial court. Only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where two permissible views of the evidence exist, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra; Turner v. State Farm Mut. Auto. Ins. Co., 32,423 (La.App.2d Cir.10/27/99), 743 So.2d 924.
Tandy testified that he had managed the Stuckey's store from July, 1994 through August, 1996 without compensation, because there was not sufficient cash flow at the time to pay himself a salary. In 1996, he began paying himself a salary in the amount of $2000 per month. He admitted that the decision to pay himself was made unilaterally, and there was no agreement by the stockholders that he should have been paid or the amount to pay him.
Tandy further testified regarding the two Pecan Shoppe stockholder meetings that occurred during the time frame. Tandy testified that he, Maxwell and Southerland met in July, 1994 in Georgia to discuss the Stuckey's store. Denmark's widow, who had obtained his interest in Pecan Shoppe upon Denmark's death, was not in attendance. Tandy testified that he informed Maxwell and Southerland at that meeting that he planned to move to Louisiana and take over management of the store. When questioned at trial if he had been given authority to take over management of the Stuckey's store, Tandy could only answer that he, Maxwell and Southerland had "discussed it." He admitted that no vote was taken at that meeting in connection with his managing the store, and when asked whether the stockholders had discussed a salary for him to manage the store, he could not recall. Most important, however, was Tandy's admission that no formal meeting of the stockholders or directors occurred wherein he was formally employed to be manager of the store.
Tandy interestingly enough did not characterize the January 6, 1997 meeting as a meeting of the Pecan Shoppe stockholders, because only two of the stockholders were physically present. Tandy further stated that the meeting was not "a formal meeting," and that no votes were taken on anything. Tandy was able to recall that he informed those present at the meeting that he had begun paying himself a monthly salary of $2000; however, he was unable to recall whether any of the stockholders had disagreed with his being paid a salary.
Maxwell testified about the 1994 meeting between her, Tandy and Southerland. *116 She recalled that the meeting occurred after the death of her father, Eckels, and that she had the financial records for Pecan Shoppe, which Eckels had previously maintained. She handed these over to Tandy. She testified that Tandy informed her and Southerland that he was going to run the Stuckey's store and would "make a good profit for the owners." She further stated that there was no discussion regarding a salary for Tandy, nor was there any formal action taken by the stockholders at that meeting (as in a vote and resolution) to formally employ Tandy as manager of the store.
Maxwell further testified that around the time of the 1997 stockholders' meeting, she had been told by Tandy via telephone that he had not been paid for managing the store. However, the matter had not been further discussed between them. Before the meeting, she stated that she had no information from Tandy regarding the financial condition of the store, although she had repeatedly made requests for financial information.
Based on the testimony and evidence presented before it, we cannot say that the trial court was clearly wrong in its determination that Tandy was not employed by Pecan Shoppe. Primarily, we note that Tandy did not produce an employment contract between him and Pecan Shoppe wherein he was formally employed as manager of the Stuckey's store. Moreover, he did not produce any corporate resolution or ratification of Pecan Shoppe indicating its approval of him taking such control. There is no question that the stockholders of Pecan Shoppe never formally approved or ratified Tandy's decision to oversee the Stuckey's store, nor was a salary for Tandy ever approveda fact admitted by Tandy. We note that Tandy's decision in 1994 to run the Stuckey's store appeared to be a unilateral decision by Tandy, and not one that was ever approved by the majority of the stockholders. Although Tandy looks to the minutes of the 1997 stockholders' meeting as proof that the stockholders approved the amount of salary he ought to have been paid, he himself did not characterize that meeting as a formal meeting of the Pecan Shoppe stockholders. When Tandy finally began to draw a monthly salary in 1996, it was a unilateral decision on his part. In fact, Tandy took various unilateral actions on behalf of Pecan Shoppe, including borrowing money from his wife and mother-in-law and making repairs to the store building. These actions were never authorized by the stockholders of Pecan Shoppe, and, apparently, never even disclosed by Tandy. During this same period, Tandy failed to file (or cause to have filed) timely the federal corporate tax returns for several years, nor did he supply the other stockholders with financial information of the corporation, even when specifically requested. Pecan Shoppe was a very loosely run corporation. In the years between its inception in 1964 and 1998, there were apparently only three meetings of the stockholders and minutes of only two of those meetings were taken. The trial court's finding that Tandy was merely the stockholder "who volunteered for and was granted the duty to oversee the operations" of the Stuckey's store is clearly supported by the record. In fact, in Tandy's October 5, 1998 letter to Maxwell, wherein he tendered his resignation, notably, he resigned in his corporate capacity "as President and as Secretary/Treasurer of Pecan Shoppe...." He made no mention of being "manager" of the store.
Finally, we note that Tandy was evasive on cross-examination and persisted in answering defense counsel's questions with "I don't recall," which reasonably could lead the fact-finder to a conclusion that Tandy was not the most credible or reliable of witnesses. See, Childs v. Zurich *117 American Ins. Co., 476 So.2d 403 (La.App. 2d Cir.1985), writ denied, 479 So.2d 920 (La.1985); Gooding v. Millet, 517 So.2d 396 (La.App. 5th Cir.1987). Considering the foregoing, we conclude that the trial court did not commit error in its determination that Tandy was not employed by Pecan Shoppe, and, therefore, was not entitled to a salary for the time he was managing the Stuckey's store.

Unjust Enrichment
Tandy also argues that he is entitled to recovery under the doctrine of unjust enrichment.[3] Unjust enrichment is founded on the equitable principle that no one should be enriched at the expense of another. Although it is a remedy in equity, courts are discouraged from using the principle to remedy every unjust displacement of wealth. Caldwell Wholesale Co., Inc. v. Central Oil & Supply Corp., 32,937 and 32,938 (La.App.2d Cir.05/10/00) 761 So.2d 684, 688, writ denied, 00-2151 (La.10/13/00), 771 So.2d 650. In order to employ such a remedy, therefore, each of the following elements must be proven: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff. Caldwell Wholesale Co., Inc, supra; Baker v. Maclay Properties Co., 94-1529 (La.01/17/95), 648 So.2d 888; Edmonston v. A Second Mortg. Co. of Slidell, Inc., 289 So.2d 116 (La.1974); Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).
A plaintiff has the burden of proving each element of unjust enrichment by a preponderance of the evidence. Caldwell Wholesale Co., Inc., supra; Harper v. Kennedy, 561 So.2d 830 (La.App. 2d Cir. 1990).
In this case, Tandy argues that all of the elements of unjust enrichment have been met. However, we note that Tandy failed specifically to prove that Pecan Shoppe was enriched or that he was impoverished. Tandy offered no evidence (other than his self-serving testimony) of how Pecan Shoppe was specifically enriched by his services at the Stuckey's store.[4] Other than the fact that Pecan Shoppe did not have a manager on its payroll during the period of time in question, there was no evidence regarding the value of those services to Pecan Shoppe; for instance, there was no evidence regarding what a Stuckey's store manger's compensation package would have cost Pecan Shoppe.
Moreover, an application of the legal elements of the doctrine of unjust enrichment cannot be made without consideration of the underlying factual circumstances which make up Tandy's claim. Primarily, in considering Tandy's argument, we observe (as did the trial court) that Tandy's actions were never approved by Pecan Shoppe. His actions were for the most part unilateral and voluntary, and he could have stopped his efforts at the Stuckey's store at any point in time. In this case, we conclude that Pecan Shoppe was not unjustly enriched because Tandy voluntarily acted in such a way that both caused his alleged impoverishment and whatever enrichment Pecan Shoppe might *118 have received. See, Gray v. McCormick, 94-1282 (La.App. 3d Cir.10/18/95), 663 So.2d 480, 487 ("The impoverishment element [under the doctrine of unjust enrichment] is met only when the factual circumstances show that the impoverishment was not a result of the plaintiffs' own fault or negligence or was not undertaken at his [sic] own risk."). Additionally, we point out that Tandy was a 25 percent stockholder in Pecan Shoppe, and, as such, had an interest in seeing the business succeed. This would be a justification or cause for Tandy's alleged impoverishment or enrichment of the corporation. Therefore, we conclude the trial court did not err in its finding that the doctrine of unjust enrichment did not apply to the facts of this case.

CONCLUSION
For these reasons, we conclude that the judgment of the trial court was correct and is, therefore, affirmed. Costs of this appeal are assessed to Tandy.
AFFIRMED.
NOTES
[1] The Judgment reflects that this matter was originally consolidated with another lawsuit against Pecan Shoppe by Orbie Fowler Hart and Leanne Hart Tandy. Although the Judgment also contains a disposition in regards to that portion of the lawsuit, those plaintiffs have not appealed.
[2] Pecan Shoppe was represented by different counsel at the time.
[3] Tandy originally brought this claim before the trial court in his Rule for Partial New Trial for Reargument Only filed after the trial court's final Judgment of February 29, 2000. Said motion was denied in the trial court's Judgment dated November 6, 2000.
[4] In fact, the evidence indicates that Pecan Shoppe sought Chapter 11 bankruptcy relief in the proceedings In re: Pecan Shoppe of Minden, Inc., In the United States Bankruptcy Court for the Southern District of Georgia, Dublin Division, No. 98-30652.