852 So.2d 1192 (2003)
Ora and Lloyd WILLIAMSON, Plaintiffs-Appellants,
v.
MONROE MEDICAL CLINIC, Defendant-Appellee.
No. 37,463-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2003.
Matthew M. Courtman, Monroe, for Appellants.
Nelson, Zentner, Sartor, et al., by F. Williams Sartor, Jr., Monroe, for Appellee, Monroe Medical Clinic.
Brent A. Talbot, New Orleans, for Appellee, Laboratory Corp of America Holdings.
Before BROWN, GASKINS, and TRAYLOR (Pro Tempore), JJ.
BROWN, C.J.
Defendant's motion for summary judgment was granted and plaintiff's claims were dismissed. Plaintiff appealed. For the reasons set forth below, the judgment of the trial court is affirmed.

FACTS
Plaintiff, Lloyd Williamson, was employed by Railserve Rail Switching Company ("Railserve"), which is required by federal regulations to conduct random drug testing of its employees. Defendant, Monroe Medical Clinic ("MMC"), served as the collection facility for employee specimens which were then sent to a third-party laboratory to be tested. On February 4, 1999, Williamson provided his sample to MMC between 12:30 and 12:50 p.m. The sample, however, was not within the required temperature range (90 to 100 degrees Fahrenheit). A temperature lower than 90° F indicates that the sample had cooled and was obtained before Williamson appeared at the clinic, which creates the possibility that someone else provided the sample. Accordingly, Williamson returned between 3:00 and 3:30 p.m. that same day to provide a second urine sample. This specimen was forwarded to the testing facility, Laboratory Corporation of America *1193 Holdings ("LabCorp"). The custody and control form accompanying the sample indicated that it had been taken at 12:30 or 12:50 p.m., the time of Williamson's first sample. The specimen tested positive for marijuana. The reporting entity, University Services MRO, issued a report to Railserve after performing a medical review of the test results. As a result of the positive test, Williamson was terminated from his employment with Railserve.
On September 2, 1999, Williamson filed suit against MMC alleging that the test resulted in a "false positive" because of negligence in collecting the urine specimen. Williamson alleged in his petition that he has not smoked or otherwise ingested marijuana since 1984. His arguments center around the time shown on the control form for the collection of the specimen.[1]
On July 10, 2002, MMC filed a motion for summary judgment. Attached to its motion was the affidavit of Betty Yruegas, the MMC employee who collected the urine specimen. According to her affidavit, Williamson gave two separate specimens on February 4, 1999. The first was rejected due to a lower than acceptable temperature and distinctive odor. She discarded the first specimen by pouring it into a sink and flushing the sink with water. When Williamson returned to provide the second specimen, she took it from him and, once she determined that it was within the acceptable temperature range, she capped the specimen cup. After Williamson signed the evidence seal attesting to the fact that it was his specimen and that he had not tampered with it in any way, she placed the seal over the specimen cup. Ms. Yruegas then placed the specimen cup in the evidence submission bag to be picked up by the courier. This was all done in the presence of Williamson. She signed the custody and control form after receiving "the" specimen from Williamson. The information on the form is accurate with the exception of the time of collection, which is incorrectly noted as 12:30 p.m., when in fact the specimen forwarded for testing was collected between 3:00 or 3:30 p.m.
Also attached to the motion for summary judgment were requests for admission propounded to the plaintiff which he failed to deny. The facts so admitted which are pertinent to the disposition of this case are the following:
The specimen submitted by Lloyd Williamson to Monroe Medical Clinic on February 4, 1999, at approximately 12:40 p.m. was, in fact, a specimen produced by Lloyd Williamson.
The second specimen submitted by Lloyd Williamson to Monroe Medical Clinic on February 4, 1999, sometime after 2:00 p.m. was, in fact, a specimen produced by Lloyd Williamson.
Lastly, MMC attached the federal regulations promulgated by the U.S. Department of Transportation regarding the proper procedures for collection of urine samples.
No opposition memorandum or affidavits were filed on behalf of plaintiff. The matter came for hearing on September 19, 2002. The trial court granted summary judgment, and a written judgment to that *1194 effect was signed on September 23, 2002. The instant appeal by Williamson followed.

DISCUSSION
Williamson argues on appeal that the trial court erred in granting summary judgment because there remains a genuine issue of material fact as to which specimen was forwarded to the testing lab and because it is clear from the evidence that MMC did not follow the applicable regulations for proper urine specimen collection.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966(C)(1). A fact is material if its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Curtis v. Curtis, 28,698 (La.App.2d Cir.09/25/96), 680 So.2d 1327.
When a motion for summary judgment has been properly made and supported, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.
MMC moved for summary judgment on two separate grounds. First, MMC argued that in light of Betty Yruegas' affidavit, there is no issue of fact as to which of the two specimens provided by Williamson was forwarded to LabCorp for testing and that the incorrect collection time noted on the custody and control form was simply an error. Second, MMC argues that, regardless of whether an issue of fact exists as to which of the two specimens was forwarded, that fact is not material because Williamson concedes that both specimens were his.
By not denying MMC's requests for admission or objecting to summary judgment, Williamson admitted that both specimens in question were of his urine.[2] While the first was rejected as a valid sample because of its low temperature, Williamson presented no evidence that the low temperature could affect the integrity of the specimen for the purposes of yielding accurate results when being tested.
The purpose of the regulation requiring that the urine specimen collected fall within a prescribed temperature range is to help ensure that the specimen provided is that of the individual to whom the drug test is to be administered. It ensures that the specimen provided by the employee to *1195 be tested is in fact a specimen of his urine (as opposed to that of a third party brought in by the employee) and that it has not been tampered with (such as through dilution). This purpose is clearly reflected in the language of 40 CFR § 40.25(e)(2)(i), the regulation relied on:
(2) For the purposes of this part, the following circumstances are the exclusive grounds constituting a reason to believe that the individual may alter or substitute the specimen:
(i) The employee has presented a urine specimen that falls outside the normal temperature range (32-38 C/90-100 F), and ...
The duty owed pursuant to this statute is owed to the employer, the party for whom the drug test is to be performed. It is intended to ensure that the right individual is being tested. The regulation does not indicate or suggest that a below range or normal temperature reading at the time of collection can affect the integrity of the specimen so as to affect the results of the test nor did Williamson present any evidence to that effect, i.e., that a below normal temperature reading at the time of collection could be the cause of a false positive result for marijuana. Therefore, there is no evidence that the test of either specimen, both of which Williamson has admitted to being his, could have been negatively affected by any actions of MMC or its employees. Therefore, we find that plaintiff failed to meet his burden of showing a causal connection between the negligence complained of and the particular harm suffered, absent which MMC's conduct is not actionable. Kniepp v. City of Shreveport, 609 So.2d 1163 (La.App. 2d Cir.1992), writ denied, 613 So.2d 976 (La. 1993).
We likewise find no merit in Williamson's argument that summary judgment is precluded by MMC's failure to comply with the regulation which required it to "properly" execute the chain of custody block on the custody and control form, 49 CFR § 40.25(c). Because Ms. Yruegas admitted to placing the wrong collection time on the form, Williamson concludes that the form could not have been "properly" executed, thus constituting negligence per se. Assuming, arguendo, that this would be prima facie evidence of negligence, Williamson was still obligated to show some causal connection between the alleged negligent behavior and the harm suffered. He has not done so. Williamson presented no evidence tending to show that any alleged "false positive" test result is causally connected to MMC's negligence in either forwarding the first specimen with a below normal temperature reading or in sending the second specimen with the wrong collection time noted on the custody and control form.
Lastly, we find no merit in Williamson's argument concerning the trial court's alleged error in allowing MMC to present evidence in support of its motion for summary judgment which contradicts what he asserts to be a previously admitted fact. Williamson specifically refers to the following request for admission which was served on MMC with his original petition for damages:
You are requested to admit that, regarding the drug testing of Lloyd Williamson conducted on February 4, 1999, the urine specimen collected at either 12:30 p.m. or 12:50 p.m. and bearing the "Specimen ID No." of "XXXXXXXXX-X" is the only urine specimen that the records of Monroe Medical Clinic show Lloyd Williamson as having presented on February 4, 1999.
Williamson asserts that because this request was served on September 7, 1999, and MMC did not respond until October 20, 1999, more than 30 days after the *1196 request was made, the request was deemed admitted. La. C.C.P. art. 1467. This court, however, has recognized in specific cases that the failure to timely answer a request for admissions does not always result in an automatic admission of those facts, and we need not make any such analysis here. See Jie v. Certified Lloyds Plan, 34,545 (La.App.2d Cir.04/04/01), 785 So.2d 118; Security National Trust v. Kalmback, 613 So.2d 664 (La.App. 2d Cir. 1993).
Williamson does not dispute that he supplied two separate specimens. At best, the admission of this fact would support the argument that the specimen forwarded to LabCorp for testing was the earlier of the two specimens with the below normal temperature. As discussed above, we do not believe such a finding precludes summary judgment due to Williamson's failure to present any evidence regarding this alleged act of negligence being a cause-in-fact of the alleged harm suffered. However, by not responding to the summary judgment motion, we are left with only Ms. Yruegas' affidavit that the time was simply a mistake. This fact is uncontradicted.

CONCLUSION
For the reasons set forth above, we affirm the trial court's grant of MMC's motion for summary judgment and dismissal of Williamson's claims against it. The costs of this appeal are assessed to Williamson.
Affirmed.
NOTES
[1] After MMC filed its answer denying any role in the actual testing of the specimen, Williamson filed an amending and supplemental petition adding LabCorp and University Services MRO as defendants and maintaining its action against MMC for negligent collection of his specimen. Both LabCorp and University Services MRO were subsequently dismissed from the suit.

Williamson's wife, Ora, was a co-plaintiff making a "loss of consortium" claim; however, this claim was dismissed in an amended petition.
[2] Admissions may be used to establish uncontradicted facts or controversial issues which constitute the crux of the matter in litigation. La. C.C.P. art. 1467; Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La. 1976). When the party receiving the request for admissions fails to respond to the request by any means, the fact is deemed admitted. Succession of Rock, supra; Tandy v. Pecan Shoppe of Minden, Inc., 34,578 (La.App.2d Cir.04/04/01), 785 So.2d 111. However, in Succession of Rock, the Louisiana Supreme Court pointed out that the codal articles do not require a party to utilize a particular form to respond to the request. The only formality dictated by La. C.C.P. art. 1467 is that "a written answer or objection addressed to the matter, signed by the party ..." be served upon the party which requested the admission. In the case presently before us, MMC's requests for admissions went unanswered and were not objected to; therefore, Williamson admitted that both specimens in question were his urine.