WILLIAMS, J.
 

 hWe granted this application for supervisory review filed by the defendants, Continental Casualty Company, Guerriero & Guerriero, LLC and Joe D. Guerriero, to
 
 *1196
 
 determine the correctness of the district court’s denial of the defendants’ motion for summary judgment. Finding error in the trial court’s ruling, we reverse.
 

 FACTS
 

 On April 15, 2005, Mary Robinson allegedly tripped, fell and injured herself at the Cotton Port Apartments in West Monroe, Louisiana. She retained attorney Joe Gu-erriero and the law firm of Guerriero & Guerriero, LLC (collectively “Guerriero”) to represent her in a lawsuit against the apartment complex. Guerriero did not file a lawsuit within one year of the accident. In June 2006, Guerriero informed Ms. Robinson that her claim had prescribed because no lawsuit had been filed. Several months later, on October 2, 2006, Ms. Robinson committed suicide.
 

 On April 12, 2007, the “Estate of Mary Alice Robinson, appearing herein through its duly appointed representative, Debra Kay Murray” filed the instant legal malpractice lawsuit against Guerriero and his legal malpractice insurer, Continental Casualty Company. In its petition, the estate alleged that Guerriero’s “failure to file a lawsuit on behalf of the decedent constitutes legal malpractice and entitles her succession to an award of such damages to which she would have been entitled against the original tortfeasor together with such damages as may flow from the act of malpractice.” The petition did not name Ms. Murray as a plaintiff in her individual capacity.
 

 |2On October 1, 2007, a “First Amended and Restated Petition” was filed. The petition named as plaintiffs the decedent’s major children, “George Robinson and Debra Kay Murray, individually, and as the duly-appointed representative[s] of the Estate of Mary Alice Robinson.” In addition to the claim for legal malpractice, the plaintiffs asserted a wrongful death claim, alleging that the defendants’ “acts of negligence ultimately lead [sic] to the untimely death of Ms. Robinson.”
 

 In February 2009, the defendants filed a motion for summary judgment and, in the alternative, partial summary judgment. The defendants argued that (1) the “Estate of Mary Alice Robinson” had no right to bring the action; and (2) the claims of the decedent’s major children were per-empted pursuant to LSA-R.S. 9:5606. In the alternative, the defendants argued that they were entitled to summary judgment because (1) the wrongful death claims did not prescribe during Guerriero’s representation; and (2) the plaintiffs failed to present any evidence to show that the alleged legal malpractice caused the decedent to commit suicide.
 

 The plaintiffs opposed the motion for summary judgment, arguing that Ms. Murray was a proper plaintiff to bring the lawsuit in April 2007 because she was the representative of the estate as well as the decedent’s surviving child. The plaintiffs also asserted that defendants were aware of the existence of Ms. Murray prior to the decedent’s death and, therefore, the amended petition related back to the date of the original petition.
 

 The district court denied summary judgment stating:
 

 [T]his Court finds genuine issues of material fact remain and, thus, the moving party is not entitled to judgment as |sa matter of law. More particularly, this Court concludes that Article 685 is applicable. Further, genuine issues remain as to the legal effect of the legal malpractice on Mary’s mental health, and whether the effects caused her to commit suicide.
 

 The court did not address the defendants’ argument with regard to peremption.
 

 
 *1197
 
 DISCUSSION
 

 Legal Malpractice/Survival Action
 

 The defendants contend the decedent’s estate did not have a legal right to institute the survival action because the decedent had living children who had the exclusive right to bring the action. In support of their argument, the defendants cite LSA-C.C. art. 2315.1, which provides for the classes of plaintiffs who have the right to bring a survival action.
 

 LSA-C.C. art. 2315.1 provides, in pertinent part:
 

 A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
 

 (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
 

 (2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
 

 (3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
 

 (4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.
 

 B. In addition, the right to recover all damages for injury to the deceased, his property or otherwise, caused by the 14 offense or quasi offense, may be urged by the deceased’s succession representative in the absence of any class of beneficiary set out in Paragraph A.
 

 [[Image here]]
 

 Citing LSA-C.C.P. art. 685, the plaintiffs argue that the succession representative was the proper party to bring the survival action. LSA-C.C.P. art. 685 provides:
 

 Except as otherwise provided by law, the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or not, need not be joined as parties, whether the action is personal, real, or mixed.
 

 In
 
 Haas v. Baton Rouge General Hospital,
 
 364 So.2d 944 (La.1978), a woman was injured during her stay in the hospital. She subsequently died without filing suit against the hospital. She left a surviving husband, but no children. The husband also died without filing suit against the hospital. After the death of the husband, the administrator of the woman’s estate and the testamentary executor of the husband’s estate (the same person) filed a survival action against the hospital in his representative capacity. The hospital filed an exception of no right of action which the trial court and appellate court sustained. The Supreme Court reversed, finding that the executor of the husband’s estate was the proper party plaintiff. The Court stated:
 

 [T]he right to recover damages (other than property damages) caused by an offense, upon the death of the injured person, shall survive for a period of one year from the death of the deceased in favor of certain designated beneficiaries. The right of action does not Lpass through the victim’s succession to be transmitted to his heirs as an inheritance. Instead, it devolves exclusively upon specially designated classes of beneficiaries or survivors set forth in said article. Therefore, in the instant case,
 
 *1198
 
 upon the death of [the] tort victim, the right to recover damages for the personal injuries sustained by her as a result of the alleged offense survived solely in favor of her spouse ... in view of the fact that [the tort victim] died without children. Hence, the succession representative of the tort victim’s estate has no right to bring the action to recover damages for the personal injuries sustained by the tort victim.
 

 Id.
 
 at 945.
 

 In the instant case, the decedent had surviving children, and the survival action devolved exclusively upon the surviving children as set forth in LSA-C.C. art. 2315.1. Therefore, upon her death, the right to recover damages for the personal injuries she sustained as a result of her fall at the apartment complex, as well as for any damages sustained as a result of legal malpractice, survived solely in favor of her children. Although Ms. Murray filed the April 2007 lawsuit, she did not appear in her individual capacity. Therefore, we find that the district court erred in concluding that the succession had a right of action pursuant to LSA-C.C.P. art. 685. This article begins with the statement, “Except as otherwise provided by law[.]” Thus, the application of Article 685 is limited by LSA-C.C. art. 2315.1, which specifically addresses the proper parties to enforce the rights of a deceased person. Accordingly, we find that the district court erred in concluding that LSA-C.C.P. art. 685 was applicable to the facts of this case.
 

 Survival Action/Peremption
 

 The defendants also contend the amendment to the petition, adding Ms. Murray and Mr. Robinson as plaintiffs in their individual capacities, is [fibarred by peremption. The defendants argue that the one-year peremptive period for filing a legal malpractice action commenced in June 2006, when the decedent received notice that her claim against the apartment complex had prescribed. The petition was not amended to add her children as plaintiffs until October 1, 2007.
 

 LSA-R.S. 9:5605 provides, in pertinent part:
 

 A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, ... whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
 

 [[Image here]]
 

 B. [T]he one-year and three-year periods of limitation provided in. Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
 

 In the instant case, it is undisputed that the decedent and Ms. Murray learned of the alleged act of malpractice on an unspecified date in June of 2006. Therefore, the one-year prescriptive period for filing a legal malpractice action against the defendants commenced in June 2006. As stated above, the initial action, brought by Ms. Murray in her capacity as legal representative of her mother’s estate, was filed on April 13, 2007. The amended petition,
 
 *1199
 
 adding Ms. Murray and Mr. Robinson as plaintiffs in their individual capacities, was filed on October 1, 2007.
 

 17Typically, in cases in which the wrong party files suit and interrupts prescription, a subsequent amended petition filed by a party with procedural capacity “relates back” to the original petition, and the lawsuit can continue. This procedural rule is set forth in LSA-C.C.P. art. 1153, which provides:
 

 When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
 

 In
 
 Giroir v. South Louisiana Medical Center, Div. Of Hospitals,
 
 475 So.2d 1040 (La.1985), the decedent’s husband filed a survival action and wrongful death claim against several physicians and a hospital. The survival action was filed by the husband in his capacity as administrator of the decedent’s estate. One year and three days after the decedent’s death, an amended petition was filed, adding the decedent’s two major children as plaintiffs in both the survival action and wrongful death action. The amended petition also changed the husband’s capacity with regards to the survival action so that he appeared in his individual capacity, rather than as administrator of the decedent’s estate. The defendants filed peremptory exceptions of prescription, arguing that the claims of the decedent’s children had prescribed because the amendment adding them as plaintiffs was not filed within one year of the decedent’s death. Citing
 
 Ray v. Alexandria Mall,
 
 434 So.2d 1083 (La.1983),
 
 [1]
 
 the Louisiana Supreme Court found that |Rthe amended petition related back to the date of the filing of the original petition. The court stated:
 

 With respect to [the husband], the amendment only sought to change the capacity in which he brought the survival action. Because Mr. Giroir was already before the court in a different capacity and filed the amendment only ten days after the original petition, and because the defendants already were on notice of the facts out of which his claim arose, there was no prejudice to the defendant and the amendment clearly related back. Regarding the children’s wrongful death and survival actions, each action added by amendment clearly stems from the same conduct, transaction, or occurrence set forth in the original pleading, viz., the medical malpractice and the resulting death of the children’s mother. The defendants knew or should have known of the existence and involvement of the Giroir children.
 

 * * *
 

 Under the circumstances of this case, no essential protective purpose of the prescriptive statute is violated by permitting relation back of the post prescription
 
 *1200
 
 amendment based on the same factual situation pleaded in the original timely petition. Through the original pleading,, the defendants knew that judicial relief was sought arising from the general factual situation alleged, and they were put on notice that their evidence concerning it should be collected and preserved.
 

 Id.
 
 at 1044-45.
 

 However, in
 
 Naghi v. Brener,
 
 2008-2527 (La.6/26/09), 17 So.3d 919, the court rejected an argument that an amended petition adding or substituting plaintiffs should be allowed to relate back to the original timely filed petition in a legal malpractice action. The court concluded that “relation back of an amended or supplemental pleading adding a plaintiff isj^not allowed to avoid the running of a peremptive period such as that found in La. R.S. 9:5605.” In
 
 Naghi, supra,
 
 property owned by a corporation was damaged by fire. The plaintiffs, who were the directors/shareholders of the corporation, hired the defendant/attorney to represent them in the matter. The defendant failed to timely pursue the claim, and as a result, the plaintiffs’ claim prescribed. The plaintiffs, in their individual capacities, filed a legal malpractice action against the defendant and her professional law corporation. The defendant filed an exception of no right of action and a motion for summary judgment, asserting that the damaged property was not owned by the plaintiffs personally, but it was owned by the corporation. In response, the plaintiffs filed an amended petition, substituting the corporation as the plaintiff. The amended petition was filed more than one year after the discovery of the alleged malpractice. The defendant filed,
 
 inter alia,
 
 an exception of per-emption. The district court overruled the exception, and the court of appeal affirmed. The supreme court reversed, stating:
 

 The primary importance of [LSA-C.C.P. art. 1153] is the avoidance of prescription by amending to add an overlooked defendant or cause of action or to join a tardy plaintiff. Frank L. Maraist,
 
 1 Louisiana Civil Law Treatise: Civil Procedure,
 
 § 6:10, p. 224 (2nd Ed.2008).
 

 Id.
 
 at 924. The court further stated:
 

 Because it is well established that “nothing may interfere with the running of a peremptive period,” and avoiding the peremptive period certainly interferes with the running of that period, relation back of an amended or supplemental pleading adding a plaintiff is not allowed to avoid the running of a peremptive period such as that found in La. R.S. 9:5605. Further, the relation back theory assumes that there is a legally viable claim tojjjwhich the pleading can relate back. Prescription only prevents the enforcement of a right by legal action, it does not terminate the natural obligation. Peremption, however, destroys the cause of action itself. Because the cause of action no longer exists after the termination of the peremptive period and any right to assert the claim is destroyed, there is nothing to which an amended or supplemental pleading filed after the peremptive period has expired can relate back. Therefore, because the Naghi’s original petition, filed within the peremptive period, was brought by a party with no right of action to sue, the First Supplemental/Amending petition filed after the peremptive [period] brought on behalf of the proper party plaintiff cannot relate back to the original timely filed petition.
 

 Id.
 
 at 925 (internal citations omitted).
 
 [2]
 

 In the instant case, a lawsuit was filed after the decedent’s death and within
 
 *1201
 
 one year of the discovery of the alleged legal malpractice. However, the party who filed the lawsuit — the Estate of Mary Robinson, through its representative Ms. Murray — was not one of the proper party plaintiffs to bring the action. Thus, based on LSA-R.S. 9:5605 and the supreme court’s ruling in
 
 Naghi, supra,
 
 the filing of the lawsuit by the wrong party had no effect on the running of the peremptory period, and the amended petition adding the plaintiffs in their individual capacities as the children of the decedent cannot relate back to the original timely filed petition. Accordingly, since no survival action was filed by the proper party plaintiffs within one year of the discovery of the alleged legal malpractice, we find that the survival action for legal malpractice was extinguished by peremption.
 

 |
 
 ^Wrongful Death Action
 

 The defendants also contend summary judgment was appropriate with regards to the wrongful death claim. The defendants argue that the plaintiffs failed to present any evidence to show that its alleged legal malpractice caused the decedent to commit suicide. Conversely, the plaintiffs contend that the evidence was sufficient to show that they will be able to satisfy their burden of proof at trial of their claim.
 

 In determining whether summary judgment is appropriate, appellate courts are to review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is proper.
 
 Suire v. Lafayette City-Parish Consolidated Government,
 
 2004-1459 (La.4/12/05), 907 So.2d 37. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(2) and (B).
 

 The burden of proof remains with the movant. LSA-C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.
 
 Id.
 
 | ^Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
 
 Id.
 

 When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits, or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B).
 

 The determination of liability in a negligence action usually requires proof of five separate elements: (1) proof that the defendant has a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant’s eon-
 
 *1202
 
 duct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) proof that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).
 
 Boykin v. Louisiana Transit Co.,
 
 96-1932 (La.3/4/98), 707 So.2d 1225;
 
 Allums v. Parish of Lincoln,
 
 44,304 (La.App.2d Cir.6/10/09), 15 So.3d 1117.
 

 Generally, the outset determination in the duty-risk analysis is the cause-in-fact.
 
 Id.
 
 Cause-in-fact is a “but for” inquiry which tests whether the accident would or would not have happened but for the defendant’s substandard conduct.
 
 Id.
 
 Where there are concurrent causes of an accident, | Uithe proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident.
 
 Id.
 
 Although the cause-in-fact inquiry is a factual determination best made by the fact-finder, summary judgment may be appropriate when there is no evidence to show that the defendants’ negligence caused the plaintiffs’ injuries. See, e.g.,
 
 Williamson v. Monroe Medical Clinic,
 
 37,463 (La. App.2d Cir.8/20/03), 852 So.2d 1192.
 

 We have reviewed this record in its entirety, and we find that the plaintiffs have presented no evidence to support a finding that Guerriero’s failure to timely file the decedent’s lawsuit was a cause-in-fact or substantial factor in bringing about her suicide. Ms. Murray testified that the decedent had suffered from depression for at least 10 years prior to her fall at the apartment complex. Ms. Murray also testified that her mother’s depression worsened after her fall, noting the lack of effort that the decedent had started putting into her appearance. Ms. Murray stated, “It was almost like she had given up.” Ms. Murray further testified that she was present when Guerriero informed the decedent that her lawsuit had prescribed. She stated that the decedent was “very upset” on that day, but she admitted that the decedent never said anything else to her about the legal malpractice matter. Likewise, George Robinson testified that he had never heard his mother mention anything about the legal malpractice matter.
 

 Dr. David Hebert, the decedent’s longtime internal medicine physician, testified that he had treated the decedent for anxiety and depression since 1981. Dr. Hebert did not attribute the decedent’s 114depression to the legal malpractice action. Significantly, he testified that the decedent never mentioned anything to him about being upset or depressed because of a legal malpractice lawsuit. Dr. Hebert testified as follows:
 

 Her depression was quite significant. She also had a lot of anxiety. She would come in here trembling, shaking, very upset, talking rapidly, and she would complain of lack of sleep, of not wanting to go on, not wanting to do things. I think she had both, a lot of anxiety and depression.
 

 Dr. Hebert also testified that the decedent’s depression became “pretty severe” within the last months of her life. He attributed much of the decedent’s depression to a problematic surgical weight-loss procedure and financial concerns. Dr. Hebert testified:
 

 [S]he was very depressed in the last year of her life. Every problem that she had seemed to be unmanageable. I know she was obsessed about weight loss and then she had a procedure done in Mexico, a lap banding procedure.... And I know she absolutely obsessed about that and was very depressed and upset. I know the last two visits I had
 
 *1203
 
 with her, she was wanting for [sic] me to find her a surgeon who would literally take it out.... And I couldn’t quite understand why she was so upset about it. But everything — and she did say that she had a lot of financial [problems] and a lot of responsibility and seemed to be less and less capable of handling that.
 

 Dr. Hebert further testified that the decedent had been treated by a psychiatrist in the 1980s, but she refused to continue psychiatric treatment. He stated, “[I]n the last year, we desperately wanted her to see a psychiatrist and she steadfastly refused.” He also testified that the decedent came to see him in June or July of 2006 and was “psychotic” and “losing contact with reality.” He stated that she was “upset” and “crying” about the lap band surgery because “it was doing terrible things to her.” Dr. Hebert also 11Btestified that he saw the decedent in August and September of 2006 and noted that her depression worsened. However, he did not attribute her condition to any one event, stating, “I don’t think you can say any one thing caused this terrible depression.” Dr. Hebert testified that the decedent’s last visit to him occurred on September 29, 2006, a few days before her suicide. He opined that she was “more alert and more stable,” but continued to complain about the effects of the lap band surgery.
 

 As stated above, there is no evidence in the record to prove that Guerrerio’s act of allowing the decedent’s lawsuit to prescribe caused her to commit suicide. After the day that she learned that the lawsuit had prescribed, the decedent did not mention the matter to her children or her physician. Dr. Hebert attributed the decedent’s depression to other events, such as financial issues and a prior weight-loss surgical procedure. However, Dr. Hebert did not attribute the decedent’s depression to the legal malpractice matter; the decedent had never even mentioned the matter to him. Thus, we must conclude that the plaintiffs failed to produce factual support sufficient to show that they will be able to satisfy their burden at trial. Accordingly, we find that the district court erred in denying summary judgment with regard to the wrongful death claim.
 

 CONCLUSION
 

 For the reasons set forth herein, the writ application filed by the defendants, Continental Casualty Insurance Company, Guerriero & Guerriero, LLC and Joe Gu-erriero is hereby granted and made peremptory. The district court’s ruling denying summary judgment is hereby reversed. J^Costs are assessed to the plaintiffs.
 

 REVERSED.
 

 [1]
 

 . In
 
 Ray,
 
 the Court established the following criteria for determining whether LSA-C.C.P. art. 1153 allows an amendment which adds or substitutes a defendant to relate back to the date of the filing of the original petition: (1) the amended claim must arise out of the same transaction or occurrence set forth in the original pleading; (2) the purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits; (3) the purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him; and (4) the purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.
 

 [2]
 

 . See also
 
 Warren v. Louisiana Medical Mut. Ins. Co.,
 
 2007-0492 (La.6/26/09), 21 So.3d
 
 *1201
 
 186 (on rehearing), a medical malpractice case in which the court determined that LSA-C.C.P. art. 1153 does not apply to the per-emptive period regarding medical malpractice claims.